No. 24-2080
_____

### UNITED STATES COURT OF APPEALS
### FOR THE SEVENTH CIRCUIT
_____

LEON BARNES,

*Plaintiff-Appellant,*

*v.*

WEXFORD HEALTH SOURCES, INC., GHALIAH OBAISI,

AS INDEPENDENT EXECUTOR OF THE ESTATE OF SALEH OBAISI, M.D.

AND EVARISTO P. AGUINALDO, JR., M.D.,

*Defendant-Appellee.*
_____

Appeal from the United States District Court
For the Northern District of Illinois, Eastern Division
No. 17-CV-8959
The Honorable Judge Franklin U. Valderrama
_____

### PLAINTIFF-APPELLANT'S REPLY BRIEF
_____

### ORAL ARGUMENT REQUESTED

TED A. DONNER
DONNER & COMPANY LAW OFFICES LLC
800 ROOSEVELT RD, SUITE B-210
GLEN ELLYN, 60137
(630) 588-1131
*Counsel for Plaintiff-Appellant*

March 17, 2025

# TABLE OF CONTENTS

| Description | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| ARGUMENT | 1 |
| I. BARNES' TESTIMONY AND OTHER EVIDENCE ABOUT DR. OBAISI'S AND DR. AGUINALDO'S CONDUCT DEMONSTRATED DELIBERATE INDIFFERENCE, PRECLUDING THE COURT FROM GRANTING SUMMARY JUDGMENT IN THEIR FAVOR. | 1 |
| A. There Are Issues of Material Fact Which the Trial Court Should Have Found Preclude the Granting of Summary Judgment in Favor of Obaisi. | 1 |
| B. There Are Issues of Material Fact Which the Trial Court Should Have Found Preclude the Granting of Summary Judgment in Favor of Aguinaldo. | 3 |
| II. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO WEXFORD BY MISAPPLYING *MONELL* AND OTHERWISE DENYING BARNES THE BENEFIT OF REASONABLE INFERENCES THAT COULD BE DRAWN FROM THE RECORD. | 8 |
| CONCLUSION | 14 |
| CERTIFICATE OF COMPLIANCE | 15 |
| CERTIFICATE OF SERVICE | 16 |

# TABLE OF AUTHORITIES

| Case | Page |
|---|---|
| *Alarm Detection Sys., Inc. v. Vill. of Schaumburg,* 2024 WL 4615768, at *2 (N.D. Ill. Oct. 30, 2024) | 9 |
| *Barnes v. Wexford Health Sources, Inc.*, 2022 WL 20288624, at *14 (N.D. Ill. Nov. 23, 2022) | 4, 8-9, 11-12 |
| *Clemons v. Wexford Health Sources, Inc.*, 106 F.4th 628, 636 (7th Cir. 2024) | 1 |
| *Conley v. Birch,* 796 F.3d 742, 748 (7th Cir. 2015) | 5 |
| *Ford v. Wilson,* 90 F.3d 245, 246-47 (7th Cir. 1996) | 9 |
| *Gevas v. Obaisi,* 2022 WL 17082526, at *7–8 (N.D. Ill. 2022) | 12-13 |
| *Goodloe v. Sood*, 947 F.3d 1026, 1027–28 (7th Cir. 2020) | 2 |
| *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) | 7 |
| *Haywood v. Wexford Health Sources, Inc.,* 2024 WL 4367790, at *9–10 (N.D. Ill. Sept. 30, 2024) | 10 |
| *Long v. Wexford Health Services, Inc.,* 2024 WL 1283537 (N.D.Ill. 2024) | 13 |
| *Murphy v. Wexford Health Sources, Inc.,* 962 F.3d 911 (7th Cir. 2020) | 6 |
| *Naveiar v. Iyiola,* 718 F.3d 692, 697 (7th Cir. 2013) | 3 |
| *Ortiz v. Wexford Health Sources, Inc.,* 2025 WL 446129, at *4–5 (N.D. Ill. Feb. 10, 2025) | 5 |
| *Owens v. Wexford Health Sources, Inc.,* 2024 WL 5363944, at *4 (7th Cir. Dec. 30, 2024) | 10 |
| *Poole v. Aguinaldo*, 2024 WL 1300920, at *8 (N.D. Ill. Mar. 27, 2024), | 4 |
| *Speaker Sortation Sys., Div. of A-T-O, Inc. v. U.S. Postal Serv.*, 568 F.2d 46, 49 (7th Cir. 1978) | 12 |
| *Thomas v. Martija,* 991 F.3d 763, 769 (7th Cir. 2021) | 1 |

| Case | Page |
|---|---|
| *Woodward v. Corr. Med. Servs. of Ill., Inc.,* 368 F.3d 917, 927 (7th Cir. 2004). | 10 |
| *Zaya v. Sood,* 836 F.3d 800, 804 (7th Cir. 2016) | 1 |

ARGUMENT

I. BARNES' TESTIMONY AND OTHER EVIDENCE ABOUT DR. OBAISI'S AND DR. AGUINALDO'S CONDUCT DEMONSTRATED DELIBERATE INDIFFERENCE, PRECLUDING THE COURT FROM GRANTING SUMMARY JUDGMENT IN THEIR FAVOR.

A. There Are Issues of Material Fact Which the Trial Court Should Have Found Preclude the Granting of Summary Judgment in Favor of Obaisi.

As this Court concluded in *Zaya v. Sood,* 836 F.3d 800, 804 (7th Cir. 2016), "[t]he Eighth Amendment provides the substantive law in this case." Under that law, when there is no disagreement over whether the plaintiff suffered from an objectively serious medical condition, "the only question is whether a reasonable jury could conclude that [the defendant medical provider] was deliberately indifferent to that condition." Thus, in *Zaya*, the Court further concluded that "[w]hether [the defendant] was subjectively aware of a risk 'is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

In this case, accordingly, Barnes is asking this Court to reverse the District Court's granting of summary judgment in favor of Obaisi (as well as that in favor of Wexford and Aguinaldo) as there are genuine issues of material fact which preclude the granting of such relief under Rule 56 and this case should therefore be heard by a jury. *See also Clemons v. Wexford Health Sources, Inc.*, 106 F.4th 628, 636 (7th Cir. 2024), *quoting Thomas v. Martija,* 991 F.3d 763, 769 (7th Cir. 2021) ("Where a physician delays in referring an inmate to a specialist in the face of a known need

1

for specialist treatment," that delay may reflect deliberate indifference.. Whether delay rises to the level of deliberate indifference depends on how serious the condition is and the ease of treatment").

The parties briefs include competing arguments about when Obaisi knew what, when he did anything about what he knew, and what he said to Barnes and other prisoners about his views on what cares they were entitled to,[1] but those disputes do not warrant rehashing here as they demonstrate questions of fact which should be more properly decided by a jury in any case. *See also Goodloe v. Sood,* 947 F.3d 1026, 1027–28 (7th Cir. 2020) ("Patients are often the best source of information about their medical condition.... [Ignoring] a patient's repeated complaints of unresolved pain and other symptoms can give rise to liability - or, at the very least, raise enough questions to warrant a jury trial. Damon Goodloe's case

---

[1] Most notably, there is a substantial disparity between Obaisi's claim that he promptly sent Barnes to UIC for a visit with a specialist and then approved the therapy that specialist ordered "within two days" and Barnes complaints that Obaisi did nothing to help Barnes for years prior to telling him (during the same period he was supposedly seeking collegial review) that he was free to ignore the orders for physical therapy. *See* Appellant's Brief, pg. 13, *quoting* Barnes Dep. (Ex. A), DKT 115-1, pg. 98-99 ("When I spoke to Obaisi and asked him what they were going to do about after I came back from the hospital and now what else they have to do, his exact words to me were, 'have to look into it.' I responded back and told [him], 'well, right there on the paper, the doctor says what to do.' He says, 'This is only a doctor's recommendation. It doesn't mean I have to do this. This is his opinion. I will let you know what I'm going to do.' So I was never told by them and even approved biofeedback therapy. According to Obaisi, that was only a doctor's recommendation. It didn't mean he was ever going to do it to begin with"). Barnes also testified that Dr, Obaisi "was well aware of my medical situation and the pain I was going through and refused to provide treatment." Appellants Brief, pg. 8, *citing* DKT 115-1, pg. 33. *See also* Appellants Brief, pg. 11, quoting Barnes Dep. (Ex. A), DKT 115-1, pgs. 110-113. ("[Prior to June, 2017], Obaisi [was] curious about it and wanted to see it and asked me if I could get the hemorrhoids out. And I told them very easily. I could squat down and don't have to push it, and it will come out. And they had me do that in front them when they seen [sic] the actual hemorrhoids out of my rectum").

is a good example"); *Naveiar v. Iyiola*, 718 F.3d 692, 697 (7th Cir. 2013) ("We long ago buried—or at least tried to bury—the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment because it is self-serving").

For the reasons stated in Barnes' initial brief, therefore - and for those stated here - the District Court's granting of summary judgment in favor of Obaisi should be reversed and this case remanded to the District Court for further proceedings, including a trial on the merits.

B.  **There Are Issues of Material Fact Which the Trial Court Should Have Found Preclude the Granting of Summary Judgment in Favor of Aguinaldo.**

The appellees claim that Barnes somehow waived any claim that this Court should reverse the trial court's decision as to Dr. Aguinaldo. They claim that Barnes supposedly declined to make any argument about Aguinaldo in the Appellant's Brief, despite the many arguments about both doctors and specific references to his treatment, medical records, and deposition testimony. *See* Appellee's Response, pg. 28, *et. seq.* Barnes is quoted in the Appellant's Brief, however, as having confirmed that Aguinaldo was aware of his condition, specifically "of the pain and suffering [Barnes] was in," and that Aguinaldo "chose not to give [him] medical treatment or approve medical treatment [following] Wexford's policies and procedures." *Id.* at 8.

Barnes' brief on appeal further points out hat Aguinaldo replaced Obaisi as Director when he passed in December, 2017 and that Aguinaldo did not see Barnes thereafter until March, 2018, some three months after this case was filed and an

order entered in this case to "ensure that Plaintiff is receiving proper medical care for the anal fissures and severe hemorrhoids described in his complaint...." *Id.,* at 13. *See also* Appellant's Brief, pgs. 13-14, quoting plaintiff ("For the past few years, I've been filing grievances and complaining to the health care unit of severe pain and bleeding in my rectal area. I spoke to both nurses and medical technicians in Pontiac and I've spoken to Dr. Aguinaldo and the Medical Director Obaisi in Stateville and all anyone has ever done is give me hemorrhoid cream, hydrocortisone and fiber. I've seen them here in Stateville several times and each time they've told me that's all they can do for me.'" Thus, as pointed out in the context of Barnes' claims as against both Obaisi and Aguinaldo:

> "'In deliberate indifference cases, 'state-of-mind evidence sufficient to create a jury question might include the obviousness of the risk from a particular course of medical treatment; [or] persistence in a course of treatment known to be ineffective' *Barnes v. Wexford,* 2022 WL 20288624 at *7 (N.D. Ill. 2022). The evidence in this case was sufficient to establish a question of fact in this regard and the District Court's decision on Dr. Obaisi's and Dr. Aguilado's motion for summary judgment should therefore be reversed." Appellant's Brief, pgs. 25-26.

As in *Poole v. Aguinaldo,* 2024 WL 1300920, at *8 (N.D. Ill. Mar. 27, 2024), accordingly, Barnes has argued - and still contends - that "a reasonable jury could find [plaintiff's] ongoing pain was a foreseeable injury of Dr. Aguinaldo's deliberate indifference."

Granted, an expert was available to testify for the plaintiff in *Poole*, while Barnes could not afford the cost of an expert in this case (the court having denied his request for payment for such an expense because he supposedly did not need

4

one).² Still, while Barnes would certainly prefer to have an expert testify on his behalf, it also remains true that the medical record in this case, common sense, and Barnes' own testimony all confirm that delays in treating Barnes' condition were bound to lead to his experiencing a great deal of serious and debilitating pain as a result. *See also Conley v. Birch*, 796 F.3d 742, 748 (7th Cir.2015) ("[An inmate should not have to] show that he was 'literally ignored' to prevail on a deliberate-indifference claim").

As pointed out in the Appellant's Brief, Aguinaldo's testimony and the medical records from this case show him to have ignored Barnes' complaints repeatedly, discounting the severity of Barnes' condition, and providing nothing more than the most minimal of treatment even after a specialist had confirmed that Barnes need surgery and physical therapy to enable him to benefit from such surgery. As the Court recently found in *Ortiz v. Wexford Health Sources, Inc.*, 2025 WL 446129, at *4–5 (N.D. Ill. Feb. 10, 2025), moreover, such evidence is sufficient to establish at least a question of fact as to Aguinaldo's state of mind:

> "The issue presented on summary judgment regarding Dr. Aguinaldo concerns whether a reasonable jury could find that he was deliberately indifferent to Ortiz's condition. This requires Ortiz to establish that Dr. Aguinaldo knew of and consciously disregarded a serious risk to Ortiz's health... If the evidence demonstrates that a decision, or course of treatment, was based on medical judgment, then there is no deliberate indifference, even if the provider's decisions may be characterized as negligent. 'But where evidence exists that the defendant[ ] knew better than to make the medical

---

² Barnes "had requested the retention of a medical expert from the court and been denied the same, at least in part because the defendants argued and the Court agreed that he could establish these facts without any need for expert testimony. See A-44 (Magistrate Memorandum Opinion and Order Denying Plaintiff's Motion to Pay for The Appointment of a Medical Expert, Dkt 98." Appellant's Brief, pg. 24.

5

decisions that [he] did, a jury should decide whether or not the defendant[ ] [was] actually ignorant to the risk of harm that [he] caused....' (citations omitted). Ortiz's claim against Dr. Aguinaldo clears this threshold. A reasonable jury could find that Dr. Aguinaldo -- who by his own admission did not even look at his patients' prior treatment records when they came to see him -- put his head in the sand and persisted in the same treatment for Ortiz's knee despite evidence repeatedly made available to him indicating that the treatment was having no effect. The evidence also would permit a finding that Dr. Aguinaldo was ignorant of, and/or disregarded, his employer's own guidelines in his treatment of Ortiz's knee injury. At the summary judgment stage at least, this is case of a mere difference of opinion regarding the application of medical judgment. Rather, a reasonable jury could find that Dr. Aguinaldo effectively did not apply medical judgment at all, at least not before serious damage had been done as a result of his indifference, and that his indifference qualifies as at least reckless disregard."

Aguinaldo claimed in *Ortiz,* as he does here, that he believes he necessarily exercised proper medical judgment in the handling of Barnes' case and that he just doesn't remember much about it despite Barnes' personal complaints, his grievances, and the filing of this lawsuit within days of his assuming Obaisi's leadership role in the program. As in *Ortiz*, however, this Court should reject that contention and find that genuine issues of material fact preclude the affirming of summary judgment in this case:

> "Defendants argue, citing *Murphy v. Wexford Health Sources, Inc.*, 962 F.3d 911 (7th Cir. 2020), that Dr. Aguinaldo's claim during his deposition that he applied medical judgment is the end of the story and that Murphy compels this result.... That's nonsense: it mischaracterizes both the evidence and *Murphy*. As indicated earlier, Dr. Aguinaldo doesn't remember a thing about his treatment of Ortiz. The best he could do was to say, generally speaking, that he applies medical judgment in treating patients. That testimony doesn't get him a pass under *Murphy. Murphy* does not say that so long as a prison physician testifies that he exercised medical judgment, a deliberate indifference claim fails. Rather, the physician's testimony was just one item of evidence the Seventh Circuit cited in support of its conclusion in that case. *See id.* at 916. Nothing in the court's decision suggests that, as defendants

6

seem to contend, a physician's intonement of the phrase 'medical judgment' is enough to end a lawsuit. If that were the case, we would not even need courts, let alone juries. Based on the evidence presented, it is genuinely disputed in this case whether Dr. Aguinaldo exercised, or applied, medical judgment in his treatment decisions regarding Ortiz's knee. A reasonable jury could find that he did not and that he was deliberately indifferent, and that this caused further injury to Ortiz."

The District Court's granting of summary judgment in favor of Aguinaldo should therefore be reversed and this case remanded for further proceedings, including a trial on the merits at which a jury should determine the propriety of Barnes' claims and the defendants' responses thereto. *See also Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) ("Grieveson did not introduce expert testimony stating that his medical condition worsened because of the delay—but that does not mean Grieveson offered no verifying medical evidence.... Grieveson supplied medical records indicating that he had a nasal fracture, that he could experience further bleeding, and that he may need to see a specialist. Grieveson later underwent painful nose surgery. The evidence Grieveson provided would certainly help a jury determine whether the delay 'unnecessarily prolonged and exacerbated' Grieveson's pain, ...and thus qualifies as verifying medical evidence that supports a genuine issue of material fact regarding the seriousness of Grieveson's medical condition....").

II. **THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO WEXFORD BY MISAPPLYING *MONELL* AND OTHERWISE DENYING BARNES THE BENEFIT OF REASONABLE INFERENCES THAT COULD BE DRAWN FROM THE RECORD.**

The parties' arguments with respect to Wexford appear to be fairly stated in their original briefs. One point, however, warrants additional emphasis inasmuch as it involves an evidentiary concern, something which would ordinarily fall within the ambit of a trial court's discretion but which, in this case, this Court should consider. In particular, this Court should reject the defendants' claim that Barnes' summary judgment response exhibits from other cases should be disregarded.

In addition to deposition testimony from this case and exhibits referenced in those depositions, when Barnes responded to the motion for summary judgment filed by the defendants, he included reference to three kinds of additional evidence, all of which was made relevant (and should be deemed admissible) by reason of the defendants' arguments. This included testimony elicited from defendants Obaisi and Aguinaldo in other cases brought against them, verified complaints filed by other prisoners against the defendants in other cases in this district, and memorandum opinions written in other cases in which summary judgment was denied as against these defendants (for the reasons stated therein).

The District Court found itself "initially dubious that mere allegations of other inmates would be admissible to establish a widespread unconstitutional practice at Barnes' trial." *Barnes v. Wexford Health Sources, Inc.*, 2022 WL 20288624, at *12 (N.D. Ill. Nov. 23, 2022). Thus, like the testimony from other cases and the Lippert

Report itself, which the court described as "problematic," the District Court refused to consider such evidence. *Id. See also Barnes*, 2024 WL 3165793, at *7 ("It was the Court's discretion whether to take judicial notice of the Lippert report and for the reasons stated in the November Order, the Court did not").

Verified pleadings are admissible for summary judgment purposes, however, and it should not have mattered that the pleadings Barnes urged the court to consider included those from other prisoners who claimed to have suffered as a result of Wexford's practices. *See Alarm Detection Sys., Inc. v. Vill. of Schaumburg,* 2024 WL 4615768, at *2 (N.D. Ill. Oct. 30, 2024) ("In *Ford v. Wilson*, the Seventh Circuit made 'explicit' its position that verifying a complaint can convert it into an affidavit for summary judgment purposes. 90 F.3d 245, 246-47 (7th Cir. 1996). The Seventh Circuit has since reaffirmed that the law allows verified complaints–containing not just allegations but sworn statements of fact–to serve as evidence for purposes of summary judgment").

Decisions rendered by other courts to deny summary judgment against Wexford and the individual defendants were likewise not proffered to establish specific acts in this case but to instead demonstrate that the defendants were on notice of the simple fact that "collegial review" resulted in often untoward delays which, in turn, resulted in prisoners suffering sometimes crippling pain from a lack of attention and treatment. Thus, while the District Court complained that no one should be required to "scour the record" in search of relevant evidence, the evidence Barnes presented was noteworthy both for its volume and for the fact that each and

9

all of the complaints he submitted were verified by the prisoners making claim against the defendants, while all of the cases referenced involved circumstances in which Wexford has not only been given notice of concerns with its practices (i,e, the Lippert report) but has also been before federal judges who have found questions of fact with regard to whether the institution itself and/or its doctors have acted in a manner which routinely runs afoul of the Eighth Amendment. *See also Owens v. Wexford Health Sources, Inc.,* 2024 WL 5363944, at *4 (7th Cir. Dec. 30, 2024) ("[Owens'] evidence—the lack of sticker signatures in his charts and the discrepancies among the pharmacy records, patient records, and Owens's date book - supports a widespread practice of Wexford tolerating the frequent failure to order timely refills and consistently distribute medications. *See Woodward v. Corr. Med. Servs. of Ill., Inc.,* 368 F.3d 917, 927 (7th Cir. 2004). Moreover, Wexford did not cite evidence that its staff generally follows the required procedures. Because these policies were intended to safeguard against the very harm Owens alleges, Wexford's disregard for enforcing its policy could show that the risk of patients missing medication was so high, and the need for training so obvious, that Wexford's failure to act reflected deliberate indifference and institutional culpability...").

  As one District Court recently found, in *Haywood v. Wexford Health Sources, Inc.*, 2024 WL 4367790, at *9–10 (N.D. Ill. Sept. 30, 2024), Wexford's "uncertain" and "piecemeal" handling of its patients' medical conditions, and its simple "failure to establish [appropriate] procedures," could reasonably be found to deprive a plaintiff, like Leon Barnes, "of his Eighth Amendment right to adequate medical care." *Id.*

As that court held:

"Wexford's motion for summary judgment, however, is denied. Mr. Haywood's copious medical records reveal that throughout his incarceration at both Stateville and Pontiac, and in both restrictive housing and the general population, the mental health treatment he received was fragmented, inconsistent, and infrequent. While his treatment plans contemplated regular, one-on-one therapy, my own review of the evidence confirms Mr. Haywood's assertion that his 'treatment records are rife with extended periods in which his only contact with a mental health staff person was segregation rounds or suicide evaluations – neither of which are mental health treatment....' [A] jury could conclude that Mr. Haywood's chaotic and unpredictable treatment at Stateville and Pontiac exacerbated his pre-existing conditions, leading to medication non-compliance, aggressive outbursts, and the need for crisis care, suicide evaluations, and disciplinary interventions, all of which suggest that his mental health was deteriorating. In other words, a jury could find that Mr. Haywood was injured by the uncertain, piecemeal nature of his care.

"Wexford argues that it 'cannot be responsible for the medical decision making made by Plaintiff's mental health practitioners....' But that misses the point. The 'medical decision' of Mr. Haywood's mental health practitioners was that monthly (or sometimes bi-monthly) individual therapy was indicated to treat his mental illness. Wexford's liability, if any, arises not from that medical decision, but from the inconsistency with which that decision was implemented.... A reasonable inference from the record is that Mr. Haywood's disjointed mental health care was the result of Wexford's failure to establish procedures: (1) to ensure that the treatment plans developed by inmates' providers in the exercise of their professional judgment were implemented; and (2) to ensure prompt review of prisoner mental health and medical records upon transfer to a new facility.Accordingly, Mr. Haywood is entitled to try his claim that Wexford's widespread practices deprived Mr. Haywood of his Eighth Amendment right to adequate medical care." *Id.*

It thus bears emphasizing that, in this case, "[t]he record here shows that Barnes suffered from a serious and painful medical condition and that there were real delays to his treatment." The District Court thus emphasized that its "opinion should not be taken to cast doubt on the gravity of Barnes' suffering." *Barnes v. Wexford Health Sources, Inc.*, 2022 WL 20288624, at *14 (N.D. Ill. Nov. 23, 2022).

11

The idea that Barnes did not offer substantive evidence of "a prior pattern of similar violations [that would put Wexford] on notice of the unconstitutional consequences of its policy" thus ignores the important history of cases which have come before this Court over the years.

Indeed, there has been such a history that - as matters stand - there is a strong basis for arguing that Wexford should be estopped from even claiming that it lacks notice of prior patterns of similar violations. *See Speaker Sortation Sys., Div. of A-T-O, Inc. v. U.S. Postal Serv.*, 568 F.2d 46, 49 (7th Cir. 1978) ("The claim in [a prior case referenced by the parties] and the claim in this case arose from the same 'administrative oversight' in the performance of the contract by Service. Both claims stem from the same controversy, and we find it unwise to allow repeated litigation involving the same issue, even if it may be characterized as an issue of law [rather than as one of fact"]).

There have been hundreds and hundreds of such cases filed both in this District and elsewhere in Illinois and there are a great many lawyers whose careers involve full-time, long-term work on such files for Wexford defendants. Summary judgment should therefore not have been granted as to Wexford and the District Court's decision in this case should be reversed and remanded, accordingly. *See also Gevas v. Obaisi*, 2022 WL 17082526, at *7–8 (N.D. Ill. 2022) ("[At Stateville, where both Gevas and Barnes were treated by Obaisi and guinaldo], it was common that patients who had received consultations or procedures at UIC had not received appropriate follow up.... [Dr. Ritz, who conducted the collegial reviews with Obaisi],

12

"reviewed Gevas's case in collegial review [and] testified that he read [and was thus on notice of the Lippert] report with respect to the care that was being provided by Wexford"); *Long v. Wexford Health Services, Inc.,* 2024 WL 1283537 (N.D.Ill. 2024) ("[A] reasonable jury could conclude that because Wexford refused offsite optometry visits in the absence of an onsite optometrist, Mr. Long was unable to receive any appointment with an optometrist, whether onsite or offsite, during the period when Stateville lacked an onsite optometrist").

## CONCLUSION

WHEREFORE, for the reasons set forth herein and in his initial Appellant's Brief, Plaintiff-Appellant LEON BARNES respectfully requests that this Court vacate the district court's judgment of November 23, 2022, reverse the Court's ruling of May 24, 2024 on Barnes' motion to reconsider, and remand this case to the district court for further proceedings.

Respectfully submitted,

LEON BARNES

By:    /s/ Ted A. Donner
       One of His Attorneys

Ted A. Donner
DONNER & COMPANY LAW OFFICES LLC
800 Roosevelt Rd, Suite B-210
Glen Ellyn, 60137
(630) 588-1131
(630) 682-1131 (fax)
tdonner@donnerco.com

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains 4343 words based on the Word Count tool in WordPerfect. This document also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) and Circuit Rule 32 because it has been prepared in a proportionally spaced typeface using WordPerfect in 12-point Century Schoolbook font, with footnotes in 11-point Century Schoolbook font.

Respectfully submitted,

LEON BARNES

By: /s/ Ted A. Donner
     One of His Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2025, I caused a true and correct copy of the foregoing brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

    Respectfully submitted,

    LEON BARNES

    By:   /s/ Ted A. Donner

    One of His Attorneys